[Crim. No. 2174.   Third Dist.   Apr. 14, 1950.]

THE PEOPLE, Respondent, v. JACK D. HINZE, Appellant.

Donald R. Colvin for Appellant.

Fred N. Howser, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

VAN DYKE, J.—This is an appeal from a judgment following conviction of the crime of escape as denounced by section 4532 of the Penal Code. On April 26, 1948, there was filed in the Justice's Court of Township No. 6, County of Shasta, a complaint charging defendant with driving a vehicle in violation of the provisions of section 510 of the Vehicle Code and warrant thereupon was issued. On the same day after his arrest he pleaded guilty of the offense charged. Time for judgment was waived and the court rendered the following judgment:

"Wherefore it is hereby ordered as punishment for the offense charged, that you, Jack D. Hinze, pay a fine of $250.00 or be imprisoned in the county jail to satisfy the same in the proportion of one day for every 2 dollars thereof."

Under the same date an abstract of the foregoing proceedings was certified by the justice of the peace, and the Sheriff of Shasta County was directed to hold and imprison the defendant until the judgment should have been satisfied as therein prescribed. Nothing further appears concerning the imprisonment of the defendant until on August 12, 1948, when, as shown by the records of the sheriff kept at the county jail, defendant was placed in that jail. On August 21st he was made a trusty and permitted to go outside the jail for the purpose of performing work. He did not return, but disappeared and was not found, though search was made. He next appeared at Ukiah, California, where he turned himself in to the Sheriff of Mendocino County. He was returned to Shasta County and informed against as having violated the aforesaid section of the Penal Code. He was tried before a jury, which found him guilty of the offense charged, and from the judgment following he takes this appeal.

It is first contended by appellant that, because the justice of the peace sentenced him to pay a fine of $250 or be imprisoned in the county jail one day for each $2.00 of fine not paid, the People, in order to convict him, must have proved the fine had not been paid. This contention cannot be sustained. The abstract of proceedings and commitment above referred to were received in evidence and therefrom it appears that the appellant had been regularly complained against,

arrested upon warrant, informed of his rights, arraigned and his plea of guilty entered. It further appeared that he was regularly sentenced and committed to the county jail in the custody of the sheriff until the judgment should have been satisfied. It was proved that he escaped from that custody within the period set by the sentence. This evidence was sufficient to prove the essentials of the crime charged.

The judgment substantially followed the provisions of section 1446 of the Penal Code which provides that a judgment that the defendant pay a fine may also direct that he be imprisoned until the fine be satisfied. Hence the judgment rendered here would result in his being held in the county jail for the term of 125 days unless that term was shortened by whole or partial payment of the fine. ''When a judgment is entered imposing a fine, or ordering the defendant to be imprisoned until the fine is paid, he must be held in custody during the times specified, unless the fine is sooner paid.'' (Pen. Code, § 1456.) Upon expiration of the term of sentence, however brought about, it would be the duty of the sheriff to immediately free his prisoner. It is presumed that the sheriff regularly performed his official duty. (Code Civ. Proc., § 1963, subd. 15; *People* v. *Serrano*, 123 Cal.App. 339 [11 P.2d 81]; *People* v. *Crider*, 76 Cal.App. 101 [244 P. 113]; *People* v. *Siemsen*, 153 Cal. 387, 390 [95 P. 863]; *City of National City* v. *Dunlop*, 86 Cal.App.2d 380, 384 [194 P.2d 788].) The application of this presumption sufficiently supplies proof that nothing had happened to shorten the term of imprisonment originally imposed.

It is next contended that the trial court erred in refusing to permit appellant at his trial in this case to prove that he had not, during the proceedings in the justice's court, been informed of his right to counsel, it being claimed that if the constitutional rights of the appellant in that proceeding had been denied him, his conviction, sentence and judgment would be thus shown to have been void and that his imprisonment at the time of his escape would have been illegal to the extent that he would have been justified in freeing himself therefrom and would not have been guilty of the crime of escape in so doing. These contentions likewise cannot be sustained  Touching these matters, the following occurred at the trial herein. After the prosecution had closed its case the defendant was called to the stand as a witness in his own behalf. He testified that he recalled his arrest in March, 1948, while driving a car

near Fall River Mills. Thereupon a question intended as a preliminary to proof of violation of his constitutional rights was objected to and the court stated, in effect, that it did not consider such testimony would be material and would sustain the objection. Counsel for defendant thereupon made an offer to prove that, if permitted, the defendant would testify he was taken before the justice of the peace the day after he was arrested; that the justice then told him, "I see nothing between you and liberty but 125 days in jail"; that appellant was not then represented by an attorney; that he was never informed by Judge Callison or anyone else that he had any right to be represented by counsel; "that until he discussed the matter with me [defense attorney Colvin] after I had been appointed as his counsel by this Court he did not know that a defendant in a Justice Court charged with a misdemeanor was entitled to representation by counsel"; that had he been so informed he would have insisted that an attorney hired by himself be present; that he would have asked to have an opportunity to obtain counsel. The court thereupon ruled that the proffered testimony would be inadmissible and after a short cross-examination the defense rested. In support of his present contention appellant relies upon such cases as *People* v. *Ah Teung,* 92 Cal. 421 [28 P. 577, 15 L.R.A. 190]; *People* v. *Clark,* 69 Cal.App. 520 [231 P. 590]; *People* v. *Avilez,* 86 Cal.App.2d 289 [194 P.2d 829]; *People* v. *Chesser,* 29 Cal.2d 815 [178 P.2d 761]; *In re McCoy,* 32 Cal.2d 73 [194 P.2d 531], and *In re Jingles,* 27 Cal.2d 496 [165 P.2d 12].

We shall treat the offer of proof made as fully adequate to present the points relied upon. No objection was made to its sufficiency and it appears from the transcript that the trial court was fully advised of the theory upon which it was claimed that the proffered testimony was admissible. It must be said that if such evidence had been received and would have, taken together with other evidence in the record, supported a verdict in appellant's favor, then it ought to have been received. It must be said, also, that the appellate courts of this state and of the United States have recently given considerable attention to the question of the effect upon criminal trials of any failure of trial courts to preserve and safeguard the constitutional rights of an accused to be represented by counsel in all such proceedings in all courts.

Relative to the proof necessary to convict on a charge of escape, our Supreme Court in *People* v. *Ah Teung, supra,* p. 425, declared:

". . . An escape is classed as a crime against public justice, and the law, in declaring it to be an offense, proceeds upon the theory that the citizen should yield obedience to the law; that when one has been, by its authority or command, confined in a prison, that it is his duty to submit to such confinement until delivered by due course of law, no matter whether he was committed to await a future trial, or as a punishment after judgment of conviction, or for any other purpose authorized by law. But when the imprisonment is unlawful, and is itself a crime, the reason which makes flight from prison an offense does not exist. In such a case the right to liberty is absolute and he who regains it is not guilty of the technical offense of escape. . . .

". . . There can be no escape, in the sense of the law, unless there was a lawful custody."

The foregoing declaration was quoted and followed in *People* v. *Clark, supra.*

These decisions, in line with many others that might be referred to, undoubtedly declare the rule applicable to a case of this nature. But it does not follow that a person who has been wrongfully imprisoned may always free himself therefrom with impunity. On the contrary, it is often the case that his imprisonment, though wrongful, proceeds from such sources that it is incumbent upon him to apply to a court of proper jurisdiction to declare and adjudge the wrongfulness of his imprisonment and in a proper case have it terminated by the court's order. In such a situation, if the person so wrongfully being imprisoned undertakes to act to free himself by leaving that imprisonment he is guilty of the offense of escape. Such we hold was the situation in which the appellant was placed when on August 21st he escaped from the custody in which he was being held, assuming, for the purpose of this discussion, that by virtue of the things he sought to prove that imprisonment had been arrived at unlawfully. Thus it was said in *Aderhold* v. *Soileau*, 67 F.2d 259, at 260:

". . . A prisoner in a penal institution whose sentence is irregular or voidable may not for that reason, and before some court has so adjudged, defy his guards and run away. A difference of opinion might cause a death. Such a doctrine would set discipline at naught."

In *Bayless* v. *United States,* 141 F.2d 578, a judgment in a habeas corpus proceeding determined that defendant's conviction in another court was unlawful because defendant did

not have assistance of counsel. During a hearing in the habeas corpus proceedings defendant attempted to escape from custody and because of that was later convicted of such attempt to escape. On appeal he contended that the original judgments and commitments were void, relying upon the opinion in the habeas corpus case, and therefore that the custody from which he attempted to escape was alike unlawful. In affirming the conviction the court, citing *Aderhold* v. *Soileau, supra,* again declared that a prisoner in a penal institution whose sentence is irregular or voidable may not for that reason, and before some court has so adjudged, defy his guards and run away.

Turning to the two cases relied upon by appellant, *People* v. *Ah Teung, supra,* and *People* v. *Clark, supra,* there is this to be observed concerning those decisions. In the first case the defendant had assisted one Lee Yick to escape from the Alameda County Jail in which he had been placed by a deputy marshal who had, as was shown in the opinion, no authority to imprison him. The court said that there was nothing to justify the action of the marshal in taking him into custody or removing him from the district in which he was found to the county of Alameda, or for the sheriff of the latter county to imprison him in its jail by direction of such marshal. It was concerning that situation that the language hereinabove quoted was used and the court carefully distinguished between the case before it and cases of informality in the commitment, saying: "The distinction between these two latter cases and the one before us grows out of the wide difference which must necessarily exist between an imprisonment without any process, and *wholly* without authority of law, and an imprisonment under a process which is simply irregular in form." In *People* v. *Clark, supra,* the court in which the defendant had been convicted of the crime of burglary in the second degree sentenced him to be punished by imprisonment in the state prison for the term prescribed by law and directed that he be delivered to the Warden of the State Prison at San Quentin. Under the same date the court suspended execution of that sentence and remanded the defendant to the custody of the sheriff of that county to work at the county road camp. From this road camp the defendant escaped. The reviewing court declared that the trial court evidently had in mind subdivision (a) of section 1203 of the Penal Code, as it then read, providing for the suspending of sentence, but had failed to give proper attention to a portion of that subdivision, which read: "In case of such suspension of imprisonment or execu-

tion of sentence, the court shall place said person on probation and under the charge and supervision of the probation officer during said suspension.'' This section, the court held, clearly contemplated that the defendant, while on probation and conforming to the terms thereof, should be at large and not in confinement and said therefore that the trial court upon a suspension of sentence was without authority to further restrain or confine the defendant and declared that he had not been guilty of escape because the court's order gave to the officers no authority to imprison him.

*In re Jones*, decided by this court on habeas corpus, and reported in 88 Cal.App.2d 167 [198 P.2d 520], while declaring that a judgment arrived at through proceedings which denied constitutional rights was a void judgment, nevertheless remanded the petitioner to the superior court from whence he had been committed for further proceedings. That case does not constitute authority for saying that had the person there involved escaped from the custody into which he had been wrongfully committed he would not have been guilty of the crime of escape.

We believe that the case of *In re McCoy, supra,* points out the unsoundness of appellant's position. There the petitioner in habeas corpus had been deprived through acts of the court officers of the benefit of counsel. He came into the hands of the county sheriff after a plea of guilty and a sentence to the county jail. The state contended that if the court determined that he should be discharged from the custody of the sheriff of the county he should still be sent back to the police court, permitted to withdraw his plea, given the right to engage counsel and proceed with his defense. Said the Supreme Court:

''. . . This presents the question as to whether or not a petitioner who is wrongfully imprisoned may be remanded to the trial court for correction of procedural errors. . . .

''No reason appears for treating a case where the defendant is deprived of his right to counsel differently from one in which other procedural error or irregularity has occurred. Accordingly, the writ is discharged and the petitioner is remanded to the custody of the sheriff for further proceedings in the police court of the city of Oakland, in conformity with his constitutional right to counsel.''

Had the appellant here either appealed from the judgment of the justice's court or in proper time petitioned a court of competent jurisdiction in habeas corpus and been able to

establish what he here offered to prove, the utmost relief he could have obtained would have been the setting aside of proceedings subsequent to arraignment and plea in the justice's court and his remand to that court for further proceedings. As noted in the case of *In re McCoy, supra*, the acts and proceedings of which he complains "did not acquit him of the offense" and he would still be subject to be tried upon any valid charge made against him in the complaint in the justice's court so far as the alleged invalidity of the proceedings therein be concerned.

If we be correct in the foregoing, then the offered testimony would not have been sufficient to prove a situation whereunder appellant would have been justified in escaping from his confinement, and on the contrary at most would have shown a situation whereunder appellant's sole remedy would have been application to some court for an order relieving him therefrom. It must be held, therefore, that the trial court did not err in refusing to admit the testimony which it ruled out.

The judgment is affirmed.

Adams, P. J., concurred.

PEEK, J.—I dissent. I cannot agree with the conclusion reached in the majority opinion. It appears to me that the situation presented in the instant case falls squarely within the rule enunciated by the Supreme Court in *People* v. *Ah Teung*, 92 Cal. 421 [28 P. 577, 15 L.R.A. 190], and by the District Court in *People* v. *Clark*, 69 Cal.App. 520 [231 P. 590].

In the Ah Teung case the essential facts were that the defendant was convicted of assisting in the escape of a friend who was being held in a county jail at the request of a deputy United States marshal under no formal order or other proper direction. In the Clark case the defendant effected an escape from a county road camp where he was being held under an illegal judgment. The basis of the conclusion of the court in each case is embodied in an excerpt from the opinion in the case of Ah Teung, which is quoted in the majority opinion herein, that

". . . An escape is classed as a crime against public justice, and the law, in declaring it to be an offense, proceeds upon the theory that the citizen should yield obedience to the law; that when one has been, by its authority or command, confined in a prison, that it is his duty to submit to such confinement

until delivered by due course of law, no matter whether he was committed to await a future trial, or as a punishment after judgment of conviction, or for any other purpose authorized by law. But when the imprisonment is unlawful, and is itself a crime, the reason which makes flight from prison an offense does not exist. In such a case the right to liberty is absolute and he who regains it is not guilty of the technical offense of escape. . . .

". . . There can be no escape, in the sense of the law, unless there was a lawful custody."

However, it also should be noted that the court recognized the distinction between an imprisonment without any process, and wholly without authority of law, and an imprisonment under a process which is simply irregular in form. On this point the court stated at page 426 as follows:

"Indeed, for a mere irregularity in the form of a warrant or commitment, the court would not be authorized to discharge a prisoner on habeas corpus (Pen. Code, sec. 1488), and much less would the prisoner himself be justified in treating it with contempt, as he might do if it were wholly void and incapable of amendment."

The rule so enunciated, together with the distinction made therein, which is the majority rule (see 56 A.L.R. 666; 163 A.L.R. 1137), has been neither modified nor disapproved by our Supreme Court.

Thus it seems to me that the one issue presented herein is dependent solely upon the question as to whether the imprisonment of the defendant, following a criminal proceeding in which he was not advised of his constitutional rights, was such an unlawful imprisonment that his departure from confinement did not constitute an escape within the rule laid down in the Ah Teung and Clark cases.

The Supreme Court of the United States has emphatically declared [subject to certain qualifications not present in the instant case] that the failure to strictly comply with the terms of the Sixth Amendment to the federal Constitution results in the court losing jurisdiction to proceed and that the judgment of conviction pronounced by "a court without jurisdiction is void." (*Johnson* v. *Zerbst,* 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461].) The courts of this state have approved a like interpretation of the provisions of article I, section 13, of our Constitution. (*People* v. *Lanigan,* 22 Cal.2d

569 [140 P.2d 24, 148 A.L.R. 176]; *In re Jones*, 88 Cal.App.2d 167 [198 P.2d 520]; see, also, 3 A.L.R.2d 1003.)

Applying this constitutional rule to the sole question presented in the instant case it would appear that if the reason which makes flight from prison an offense did not exist in the Ah Teung case because defendant's custody by the sheriff was without process and therefore void, and if in the Clark case such reason did not exist because the process under which the defendant was held was illegal and gave the sheriff no legal authority to hold him, how then can it be said that in the present case the reason which makes flight from prison an offense did exist, since under the cited cases the defendants' conviction was void, and since the court, in the Ah Teung case specifically held that "there can be no escape, in the sense of the law, unless there was a lawful custody."

Neither the decision of this court in the Jones case nor of the Supreme Court in the McCoy case (32 Cal.2d 73), both of which are cited and relied upon as the basis for the conclusion reached in the majority opinion, militates against the foregoing conclusion. Neither case involved the question presented herein, to wit: escape, and therefore cannot be considered either as directly or impliedly overruling the decision in the Ah Teung case. In fact it was not even mentioned in either of the two later cases so cited. On the contrary both of those cases support the foregoing conclusion inasmuch as the judgments therein were referred to as being void. Although the defendant in each case was remanded to the trial court for further proceedings such remand was not based upon any process issued by the trial court but, as stated in the McCoy case, was predicated upon the authority of the reviewing court under section 1484 of the Penal Code, which places upon the court or judge in a habeas corpus proceeding the obligation "to dispose of such party as the justice of the case may require . . .."

Furthermore I find nothing in the rule enunciated in the federal cases cited in the majority opinion which is applicable here. Not alone because I am convinced that the question has been answered both fully and specifically by the courts of this state but also because of the particular statutes under which those cases arose.

So long as the law as enunciated in the Ah Teung case remains unchanged the courts of this state are bound to adhere to it, and I would therefore reverse the judgment.